T. M. MORSE ET AL. v. A. S. HEIDE.

(Filed 25 May, 1910.)

1. **Pilots—Local Boards—Cruising Grounds—Legislative Authority.**

    The Legislature may confer upon a local board of commissioners of navigation and pilotage authority to mark out cruising grounds for pilot boats.

2. **Same—Pilots—Services—Tender—Regulations.**

    Under the legislative authority conferred upon the Board of Commissioners of Navigation and Pilotage of Wilmington (ch. 625, Laws 1907), that they "shall from time to time make and establish such rules and regulations respecting the arrangement and station of pilots for the purpose of compelling them to be on duty at all times," a rule and regulation of the board to the effect that no pilot, except under certain unusual circumstances, shall be entitled to his fee for such services if they be tendered beyond the cruising ground they had laid off, for pilots, is valid and reasonable.

152—40

APPEAL by plaintiff from *O. H. Allen, J.,* at October Term, 1909, of NEW HANOVER.

The facts are sufficiently stated in the opinion of the Court.

*Herbert McClammy* for plaintiff.
*Rountree & Carr* for defendant.

WALKER, J. This action was brought by the plaintiff to recover pilotage fees alleged to be due him, and which were held by the defendant to abide the judgment of the court as to whether said Morse is entitled to recover the same. The suit was commenced in the court of a justice of the peace. The defendant filed an answer, to which the plaintiff demurred. The justice gave a judgment for the plaintiff, and the defendant appealed to the Superior Court, where the case was heard upon the answer and demurrer.

The facts disclosed by the record are, that the plaintiff, who was a duly licensed pilot of the Cape Fear bar and river, sailed from Southport for Charleston, S. C., on the boat *Herman Oelrichs,* and that at or near Charleston and far beyond the bounds or station established by the Board of Commissioners of Navigation and Pilotage for the Cape. Fear bar and river, and pretending to be in the performance of his duty as a pilot, spoke the ship *Soutra* off the lightship near Charleston harbor, and the plaintiff was taken aboard said ship for the purpose of piloting her over the Cape Fear bar at the mouth of the river. When the said vessel had reached the cruising grounds established by the said board of commissioners for the Cape Fear River and bar, L. J. Pepper, who was also a licensed pilot of the said river and bar, spoke the vessel *Soutra* and demanded the right to pilot her in, which demand was refused, on the ground that the *Soutra* already had a pilot on board, that is, the plaintiff T. M. Morse. When the *Soutra* had passed over the bar, certain licensed pilots, including L. J. Pepper, filed a complaint against the plaintiff for violating the rules and regulations of the said board of commissioners with reference to the station or cruising grounds for pilots and their boats, and the matter was heard, and the commissioners decided that the plaintiff had violated said rules and regulations, and ordered that the plaintiff should not pilot the said vessel out to sea, and further decided that he was not entitled to the pilotage fees, either inward or outward, and adjudged that L. J. Pepper was entitled to pilot the vessel out to sea, which was done by him. By agreement, the amount of the fees was deposited with the defendant, who was the agent of the ship, to await the result of this action.

It is conceded that the plaintiff is not entitled to recover if the commissioners acted within the scope of their power in making the rules and regulations as to the station of pilots and their cruising grounds, because the plaintiff had transgressed these rules and regulations, which are as follows:

"1. No pilot will be permitted to leave his station to go to a neighboring port for the purpose of piloting a vessel bound from that port for the Cape Fear River, unless under peculiar circumstances, at the discretion of the chairman of this board. And every licensed pilot is expected and required to provide the means of boarding and leaving vessels at sea by pilot boats or cutters. Arrangements with tugboats or fishing boats or any other means of approaching or leaving vessels at sea will not be permitted under penalty of the revocation of license at the discretion of the board.

"2. The cruising grounds of the Cape Fear pilots shall in future (after 24 April, 1908) be restricted to that area bounded on the south by Little River and an imaginary line drawn directly southeast from Little River, and bounded on the north by Bogue Inlet and an imaginary line drawn directly southeast from Bogue Inlet, and in such area only shall Cape Fear pilots cruise and offer their services for pilotage."

The defendant contended that the Legislature had conferred authority upon the Board of Commissioners of Navigation and Pilotage, by Laws 1907, ch. 625 (Pell's Revisal, ch. 104, sec. 4957b), to adopt said rules and regulations. That section is as follows: "The commissioners shall from time to time make and establish such rules and regulations respecting the arrangement and station of pilots, for the purpose of compelling them to be on duty at all times, as to them shall seem advisable, and shall impose reasonable fines, forfeitures and penalties for the purpose of enforcing the execution of such rules and regulations."

We have held in *St. George v. Hardie*, 147 N. C., 88, that the act of 1907 is constitutional and is a lawful exercise of the power vested in the Legislature. It is customary to confer upon such boards of navigation and pilotage the power to make reasonable and proper rules and regulations for the government of those who are licensed as pilots, and we can see no reason why this custom is not sanctioned by law, or why the Board of Commissioners of Navigation and Pilotage may not, in the exercise of the power thus vested in them, prescribe the limits of cruising grounds and the stations of pilots. 30 Cyc., p. 1611. Nor do we see how any person who accepts a license which confers upon him the privilege of piloting ships on their

inward or outward passage on the river and over the bar can well complain of the conditions upon which such license is granted, provided they are reasonable; and it must necessarily be that the rules and regulations adopted by the Board of Navigation and Pilotage for the Cape Fear river and bar, to which we have referred, were not only reasonable, but necessary for the safety of vessels and the convenience of navigation. The plaintiff's counsel, in his brief, as we construe it, deems the general policy of the law to be that there should be an early tender of pilotage services, and that a pilot may, therefore, in the absence of statutory prohibition, cruise for incoming vessels beyond the pilot waters or pilotage grounds of his port. He argues that this prohibition must be by statute directly, but no reason appears to us why the Legislature, if it has the right to prescribe the limit of cruising or pilotage grounds, may not confer authority upon a local board, better acquainted than itself with the nature of the service to be rendered and the conditions and circumstances of the particular case, to carry out the legislative will by marking out the grounds and adopting such rules and regulations as in its judgment will best promote the object and purpose of providing for such a service. No authority was cited to us which sustains the contention of the plaintiff that the Legislature cannot confer such power upon a local board.

The only question, therefore, which is now presented for our consideration, is whether such authority was conferred by Laws 1907, ch. 625, and of this we have no doubt. It is true that, as said in some of the decisions, the policy of the law is to induce pilots to cruise somewhat largely, for the purpose of speaking incoming vessels at an early period; but it is also true that it is more important they should not cruise so far afield as to be absent from their post of duty—that is, the proper cruising ground at the mouth of the Cape Fear River— so that there may not be a sufficient number always present to pilot vessels which require their services to cross the bar. If a pilot can go as far from Wilmington as the port of Charleston, how much farther south or north on the coast can he go in order to obtain an advantage over other pilots? If the law permitted such a course to be pursued, it would seriously interfere with the safe and prompt navigation of vessels plying between the different ports. It is much better and safer to hold that the Legislature can, either directly or indirectly, provide for the stations and cruising grounds for pilots somewhere near the port for which vessels are bound.

So far as we can see from the facts of this case, the Legislature has made a wise provision in conferring authority upon

the Board of Navigation and Pilotage to fix the limits of cruising grounds and to establish pilotage stations, and there has been, in this case, no abuse of the authority thus conferred, but it seems to have been reasonably exercised. 30 Cyc., 1611, and notes.

The authority of the Legislature to act in such matters, and to prescribe rules and regulations for the government of pilots, seems to have been settled. The Whistler, 13 Fed. Rep., 295; 30 Cyc., 1615.

There is a provision in the statute that the commissioners shall have power to grant permission in writing to any pilot in good standing and authorized to pilot vessels, to run regularly as pilot on steamers between the port of Wilmington and other ports in the United States, and that he shall have all the rights and emoluments that belong to the river and bar pilots. Laws 1907, ch. 625, sec. 9 (Pell's Revisal, sec. 4957j). We think from the provision of this section, and the general scope of said act as gathered from the terms in which it is expressed so clearly, that it was the intention of the Legislature that pilots at the Cape Fear bar should be allowed to speak vessels only within the cruising grounds, and that their right to recover fees for their services, when tendered and refused, depends upon their compliance with the provisions of the act as thus construed.

Our conclusion is that T. M. Morse, and the other plaintiffs associated with him in the case, are not entitled to recover the fees which they now demand of the defendant and, therefore, that the judgment of the court below was correct.

Affirmed.