I. S. DAVIS v. HEIDE & CO.

(Filed 19 March, 1913.)

1. **Pilots, Licensed — Unchartered or Unnumbered Boat—Pilotage Fees—Interpretation of Statutes.**

   A duly licensed pilot may recover in our courts charges for his services, and while his failure to have his boat registered and numbered will cause a forfeiture of his license, the lawful pilotage charges for the services of such boat is recoverable by him until the commissioners of navigation and pilotage have acted thereon and revoked the owner's license. there being no provision either in our statute, Revisal, sec. 4976, or in the rules of the commissioners, which would deprive him of proper charges for the services of an unnumbered or unregistered boat owned by him.

2. **Pilots—Commissioners of Navigation—Discretion—Scope of Powers—Court's Jurisdiction.**

   *Semble*, that under our statute, Revisal, sec. 4976, it is within the discretion of the commissioners of navigation and pilotage as to whether they will revoke the license of a pilot who has violated their rules by using an unchartered and unnumbered boat; and the courts are without original jurisdiction to determine whether the rules of the commissioners have been violated in this regard.

3. **Same—Appeal and Error.**

   In an action brought in a justice's court by a licensed pilot to recover his fees for pilotage, payment was resisted on the ground that the boat was not registered or numbered, and in the court below it was contended that the commissioners of navigation had held that another pilot, who had hailed the vessel, was entitled to the fees in the sum of $170. *Semble*, the jurisdiction of the commissioners being limited to claims of $60, it did not exist in this case.

4. **Appeal and Error—Brief—Exceptions Abandoned.**

   Exceptions to the trial in the lower court, not urged in the brief or argument of the appellant in the Supreme Court, are deemed to be abandoned.

APPEAL from *Carter, J.,* at December Term, 1912, of NEW HANOVER.

This action was brought to recover certain pilotage fees. Plaintiff, who is a licensed pilot, with one Sellars, was cruising

off the bar at the mouth of the Cape Fear River on 28 June, 1912, when they sighted and spoke the steamer *Manchester Merchant,* having seen a signal or call for a pilot displayed at her masthead. Plaintiff tendered his services to the master of the ship to pilot her over the bar and up the river to the port at Wilmington, N. C., and the offer was accepted. Plaintiff performed the service and the master gave him an order on the defendants, Heide & Co., for the amount of the fees, and, upon its being presented to them, they declined to accept or pay it. This action was then brought before a justice of the peace, where the defendant had judgment, and plaintiff having again met with an adverse judgment in the Superior Court, has brought the case to this Court by appeal. It was agreed that defendants should hold the amount of the pilotage fees in their hands, to abide the final judgment in this action.

The Commissioners of Navigation and Pilotage of the Cape Fear River and Bar passed the following rules and regulations:

"RULE 17. No pilot will be permitted to leave his station to go to a neighboring port for the purpose of piloting a vessel bound from that port for the Cape Fear, unless under peculiar circumstances, at the direction of the chairman of the board. And every licensed pilot is expected and required to provide the means of boarding and leaving vessels at sea by pilot boats or cutters. Arrangements with tugboats or fishing boats or any other means of approaching or leaving vessels at sea will not be permitted under penalty of the revocation of license, at the discretion of the board."

"January 8, 1908.

"On and after 8 February, 1908, Rules Nos. 16 and 17, on page No. 5 of the Port and Harbor Regulations, shall be rigidly enforced:

"*a.* For the proper application of Rule No. 17, it is hereby ordered that each and every boat to be used in the pilotage service shall be fully described by the owners or charterers of such craft, to the chairman of this board, and such boat, being approved by the board, shall, upon application, be registered upon these official records, and an official number designated, which number shall be prominently displayed by said boat."

DAVIS *v.* HEIDE.

"March 5, 1908.

"*b.* It having been learned by the commissioners that several of the boats at Southport, recently licensed as pilot boats, have failed to display their numbers as ordered, the clerk was instructed to inform the owners of all licensed pilot boats that unless the orders of the board are obeyed and the official number which has been assigned to each boat is prominently displayed, the license will be revoked."

"December 7, 1910.

"*c.* With reference to the charge against certain pilot boats, that they have been used contrary to .the regulations, by engaging in fishing for gain and in competition with other boats regularly engaged in that business, it was ruled by the commissioners that it is not the spirit nor the intent of the board to hamper or embarrass pilots in fishing when they desire to do so, while waiting on their station in the regular way; but the board does positively prohibit the regular use of pilot boats for any other purpose than that of seeking vessels and piloting them in.

"*d.* It was further ordered that all boats numbered and licensed as pilot boats must be used for that purpose, and for no other purpose, and that no boat will be permitted to fish for the purpose of selling fish on the market. Failure to comply with this regulation will cause a revocation of the license and number of the offending boat."

Attention was also directed to Revisal, secs. 4975 and 4976, prescribing a penalty to be paid by a pilot who fails to answer a "pilot signal," or who shall fail to give proper succor in response to a signal of distress from a vessel at sea, and also providing for the removal of pilots who shall be found incompetent or who shall be guilty of "misconduct or misbehavior in office." Section 4976 further provides that, "if after removal a pilot shall attempt to take charge of any vessel, he shall pay a penalty of $200."

*B. G. Empie* for *plaintiff.*
*Rountree & Carr* for *defendant.*

WALKER, J. It appears that plaintiff had a pilot's license, or what is sometimes called a "branch," which is the nautical term for a warrant or commission, authorizing the holder thereof to pilot vessels in certain waters. The boat in which he was cruising at the time he sighted the *Manchester Merchant* off the bar was not registered and numbered as required by the rules and regulations set out in the case. We held in *Morse v. Heide,* 152 N. C., 625, that the Legislature had the constitutional power to authorize the local board of navigation and pilotage to adopt rules and regulations for the government of pilots and prescribing the manner of performing their duties, and, among others, to limit the cruising grounds beyond which, under the statute, a pilot should not speak a vessel for the purpose of piloting her across the bar. The validity of such a law could not easily be questioned, as the enactment was so apparently necessary for the safe and convenient navigation of vessels at the mouth of the river and in contiguous waters at sea. In that case the pilot had gone to Charleston, S. C., and far beyond the cruising waters of the Cape Fear bar and river, for the purpose of forestalling other licensed pilots of his station, and there, from his pilot boat, the *Herman Oelrichs,* spoke and boarded the ship *Soutra,* standing off the lightship near the Charleston bar, for the purpose of piloting her to the Cape Fear River, through Caswell Inlet. We held that the pilot was acting entirely outside of his rights and beyond the cruising limits, and that being authorized to collect fees only from ships spoken within the cruising limits, he was not entitled to recover the fees allowed for pilotage within those waters. But that is not our case. Here the pilot was duly licensed, and his only offense, grave though it may have been, consisted in not having registered and numbered his boat. The specific penalty for this omission on his part, as prescribed by the rules of the navigation board, is the forfeiture of his license. In order, therefore, to disqualify him and prevent his tendering his services as a pilot and receiving the fees therefor, previous action of the board was requisite. There is nothing in the statute or in the rules and regulations which deprives him of his fees for this breach of duty until his license is properly revoked upon notice

to him.  Revisal, sec. 4976.  The pilot may be liable to a pen-
alty and the revocation of his license, or, as the statute puts it,
"he may be removed from the office of pilot for not complying
with this rule," but the forfeiture of his fees is not one of the
penalties affixed to his delinquency.  No more can it be said
that he had lost his right to the fees for his pilotage than of
any officer that he had forfeited the fees for his services before
being removed from office, unless the law had specifically de-
clared that such should be the penalty.  One case we have
found, which is in accord with our view, is *The Alcade,* 30 Fed.
Rep., 133.  By the rules and regulations of the board of pilot
commissioners, who had authority to examine and license pilots,
the latter were required to have seaworthy boats, of certain di-
mensions and not less than 40 tons burden full decked, to cruise
outside the Columbia River bar, and in default thereof it was
provided that they should be deprived of their warrants or
"branches" by the pilot commissioners.  With reference to these
facts, the Court held that failure to comply with the rule ·did
not take away a pilot's right to his fees, and in this connection
said:  "But I am satisfied that the question of whether a pilot
is complying with the law in keeping a sufficient boat for pilot
purposes can only be made before the commissioners.  Indeed,
it matters not to the master of a vessel, to whom a pilot offers
his services on the pilot ground, how he got there.  He may
have trusted to a canoe or even swam out.  If he is on the
ground, and ready and capable of taking charge of the vessel,
that is all the master can require. . . .  The commissioners
have the power to deprive a pilot of his warrant for inattention
to his duty, or a failure to provide or keep a sufficient boat
wherewith to perform the same.  The statute has expressly con-
ferred this authority on them, and it is contrary to all the
analogies of the law that a dereliction in this respect shall be
inquired of collaterally or elsewhere.  Indeed, it would be in-
tolerable and interminable if, in every suit for pilotage, the libel-
lant could be required to show to the satisfaction of the court
that he had kept a sufficient boat on the bar, sufficiently sup-
plied with 'provisions and water' for the aid of vessels in dis-
tress."  And in the case of *The Panama,* 18 Fed. Cases, p. 1068,

DAVIS *v.* HEIDE.

*Judge Deady,* who wrote the opinion in the case just cited, said: "The Legislature has confided the administration of the law in these matters to the pilot commissioners. Whenever it appears that a pilot is evading the law and using his authority to the detriment of commerce or the pilot service, they can and should revoke his warrant." It is doubtful if, under our statute, Revisal, sec. 4976, the board would be bound to revoke the license, even if there had been a violation of their rule. They must have some discretion in the matter, and at least the right to hear first and then decide, otherwise great injustice might be done by hasty and ill-considered action. They may not think, after knowing the facts, that the offense, if committed, called for such severe punishment. At any rate, we are not the judges in such a case to decide in the first instance if the license should be revoked, nor is the Superior Court, but the body to which that duty has been confided by the Legislature is the proper one to make the decision.

It was contended in the court below, and the defense is set up in the answer, that the board had heard the matter and decided that plaintiff was not entitled to the fees, because his boat was not "registered and numbered," but that M. T. Craig of the pilot boat *D. H. Penton,* which also hailed the *Manchester Merchant,* was entitled to them. But this claim is for $170, whereas the jurisdiction of the board is limited to claims of $60, or, rather, they cannot give judgment for more than that amount, which of course excluded their jurisdiction of this matter. Revisal, sec. 4957 (1). But this contention was not urged in the brief or argument, and, we take it, was intended to be abandoned. The case of *O'Brien v. Larringer,* 36 S. C., 497, cited by the defendant's counsel, is not in point. It is like the case of *Morse v. Heide, supra.* The pilot already on the ship, when the plaintiff in that case spoke her within the cruising ground of St. Helena and Port Royal bars, boarded the ship at Philadelphia. The pilotage rules expressly forbid the collection of fees in such a case.

We conclude that the plaintiff's demurrer to the defendant's answer should have been sustained, instead of overruled, as it was, and for this error we reverse the judgment.

Reversed.